UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SYRIS T. BIRKLEY,

Plaintiff,

v. Case No. 25-CV-1636

MATTHEW JOHNSTON and
MILWAUKEE COUNTY,

Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Syris T. Birkley, who is housed at the Milwaukee County Jail, is representing himself in this 42 U.S.C. § 1983 case. He is proceeding on First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) claims against Defendant Matthew Johnston as well as a *Monell* claim against Defendant Milwaukee County based on his allegations that he has not received a proper kosher diet in accordance with his Jewish faith while housed at the Milwaukee County Jail. Birkley's amended complaint contained a request for a preliminary injunction. On June 10, 2026, Defendants filed a motion for summary judgment on the ground that Birkley failed to exhaust administrative remedies before bringing this lawsuit. The motion became fully briefed on July 21, 2026. On July 27, 2026, Birkley filed a motion for an extension of time to submit additional evidence in opposition to Defendants' motion for summary judgment. For the following reasons, Birkley's request for a preliminary injunction and motion for an extension of time will be denied, and Defendants' motion for summary judgment will be partially granted.

## PRELIMINARY MATTERS

Before turning to the parties' substantive arguments, the Court will address two preliminary matters. First, Defendants assert that Birkley has failed to comply with the district's local rules governing summary judgment procedures. Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1). The statement of proposed facts must include numbered paragraphs containing short factual statements and specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L.R. 56(b)(1)(C).

The party opposing the motion must file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. Civil L.R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other parts of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, he should include a statement, consisting of short numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. Civil L.R. 56(b)(2)(B)(ii).

Defendants, as required by the local rules, included copies of Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56 along with the motion for summary

judgment. (*See* ECF No. 31.) In addition, the day after Defendants filed the motion for summary judgment, the Court entered a notice and order informing Birkley that he was required to "respond to each of the proposed facts by agreeing with each proposed fact or explaining why he disagrees with a particular proposed fact." (ECF No. 36 at 1.) The Court also explained that "[i]t is not enough for Birkley to file only a declaration telling his side of the story. Civil L.R. 56(b)(2)(B) requires Birkley to respond to *each* proposed fact." (*Id.*) The Court warned Birkley that if he "does not respond to a proposed fact, the Court will assume that Birkley does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." (*Id.* at 1–2.)

Despite this clear warning, Birkley did not file a response to Defendants' proposed findings of fact. Instead, he filed a hybrid statement of proposed facts and response to Defendants' motion for summary judgment that contains a mixture of factual allegations, legal argument, and case citations. Even though it is sworn like a declaration, it contains information outside of Birkley's personal knowledge. Birkley's filing does not admit or deny Defendants' proposed findings of fact. The combination of factual allegations and legal argument makes it difficult for Defendants and the Court to determine whether genuine issues of material fact exist.

Even though Birkley is *pro se*, he cannot ignore the rules. Because the proposed findings of fact contained in Birkley's response brief do not comply with Civil Local Rule 56(b)(2)(B)(ii), the Court will not consider them. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [the local rules], the court chooses to ignore and not consider the additional facts that a litigant has proposed."). In addition, as the Court warned Birkley would happen if he failed to respond to Defendants' proposed findings of fact, those facts are deemed

admitted for the purpose of deciding summary judgment. *See Phoneprasith v. Greff*, No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L.R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same).

Second, Birkley filed a motion for an extension of time to submit additional evidence in opposition to Defendants' motion for summary judgment. He asserts that Defendants have not provided him with a copy of grievances he filed—Grievance Number 176286, filed in October 2025, and Grievance Number 183877, filed in January 2026. Yet, Defendants submitted a copy of Grievance Number 176286 with their motion for summary judgment. (ECF No. 34-3 at 181.) And Grievance Number 183877 is not relevant to this action because it was submitted after Birkley filed this lawsuit on October 24, 2025. Birkley has not shown good cause for the extension. Therefore, his motion for an extension of time is denied. With these considerations in mind, the Court turns to the substance of the motion for summary judgment.

## BACKGROUND

At all times relevant, Correctional Officer Matthew Johnston was employed by the Milwaukee County Sheriff's Office as a corrections officer and assigned to work in the Milwaukee County Jail. CO Johnston is the primary program coordinator for the law library, religious matters, and educational programs. His duties in this role are administrative in nature and only involve receiving and processing requests from occupants at the Jail for religious accommodations, items or services, and special religious diets. CO Johnston is not authorized to change Milwaukee County's practices or policies in these areas. When CO Johnston receives a request to accommodate a religious practice related to food, he notifies the Jail's contracted vendor, Trinity

Services Group, Inc., of the request. The dietician from Trinity determines what meals meet kosher requirements and provide for the nutritional needs of the occupant. CO Johnston plays no part in deciding what ingredients go in kosher meals that are served to occupants in the Jail or in approving or denying kosher or certified kosher meals to occupants. (ECF No. 32, ¶¶ 1, 39–42.)

Birkley was booked into the Milwaukee County Jail on September 29, 2024. He alleges that during his incarceration at the Jail, he has been routinely deprived of access to kosher food. (*Id.* ¶¶ 3, 5.)

At the Jail, the administrative process for addressing occupant complaints is the Grievance Procedure. Jail occupants can make formal complaints to jail administration regarding jail staff behavior or any other issue related to the occupant's health, welfare, facility operation, or occupant services by submitting a grievance through the Jail's Grievance Procedure. The Jail's Grievance Procedure is set forth in detail in the Milwaukee County Jail Occupant Handbook. Since July 2020, the Occupant Handbook has been uploaded to the Jail's electronic kiosk system and made accessible to jail occupants at any time they are present in the dayroom of their respective housing units, including mealtimes. Every time an occupant accesses the Jail's kiosk system, he is required to acknowledge receipt of the Occupant Handbook. The Grievance Procedure is explained in detail in a video that plays on a continuous loop in the booking room at the Milwaukee County Criminal Justice Facility, including during the time that Birkley was booked into the Jail. To aid in a thorough understanding of the Grievance Procedure, jail staff are trained to assist occupants who ask them for help in submitting grievances at the Jail. Jail occupants are also instructed by the Grievance Procedure in the Occupant Handbook to request assistance from jail staff if they have difficulty submitting grievances. (*Id.* ¶¶ 6–9, 11, 15.)

Each handbook in effect during the period of Birkley's incarceration required him to file a grievance via the kiosk. The electronic kiosks are located in every housing unit at the Jail, and they permit a jail occupant to submit grievances, grievance appeals, and final appeals to responses related to those occupant grievances. The occupant is responsible for reviewing the response to his grievance, grievance appeal, and final appeal, and he may do so by signing into his occupant account on any kiosk throughout the Jail. (*Id.* ¶¶ 12–14.)

Occupants must submit grievances and grievance appeals to jail administration within 14 days of the date of the grieved incident. Once the occupant submits a grievance on the electronic kiosk, it is assigned a number that cannot be removed or deleted from the system. Officer-related complaints or grievances must identify the officer by name, or include enough specific information to assist in identifying the officer. If the grievance did not include an officer name or include the appropriate identifying information, the grievance would be returned to the occupant to resubmit. Occupant grievances related to complaints against jail staff are reviewed by a member of the Jail's Special Projects Unit, who assigns the grievance to the appropriate floor supervisor on duty on the date and time the alleged complaint occurred. After the floor supervisor provides a response to the grievance, it is reviewed by the Special Projects Unit supervisor or a designee to ensure the response is appropriate and addresses the complaint. Once approved, the response to the grievance is made available to the occupant to review on the kiosks. (*Id.* ¶¶ 16–17, 25, 28.)

If the occupant is dissatisfied with the grievance response, the grievance response is eligible for appeal. The Occupant Handbook instructs occupants to submit their appeals with supporting documents and the full names of witnesses. Once the appeal is received, it is assigned to the shift commander at the time of the initial complaint to provide the response. The shift commander enters his or her response in the grievance system, which is then reviewed and

approved by the Special Projects Unit supervisor or a designee. Once approved, the response is reviewable by the occupant on the kiosks. (*Id.* ¶¶ 18–19.)

The Shift Commander's response can be appealed a step further to the Jail Commander or a designee. This is the final appeal, and it requires that the occupant include all prior written submissions, supporting testimony and evidence, and any newfound information or evidence. The Jail Commander or designee's response is final and cannot be appealed. The Jail's Grievance Procedure is exhausted after the occupant receives the Jail Commander's response. (*Id.* ¶ 20.)

In the event the housing unit kiosks were not available to jail occupants for any reason, jail occupants could file grievances and appeals by requesting and completing handwritten paper grievance forms and submitting them to jail staff, or hand delivering them to a jail staff member who would route the grievance to the Special Projects Unit. Any paper grievance submitted by a jail occupant was to be entered into the electronic system by a Special Projects Unit member and assigned a number. The grievance could not be removed or deleted from the system. If an occupant submitted a grievance and/or appeal on a paper form and did not have access to the kiosk, the responses to the grievance and/or appeal would be printed and delivered to the occupant either personally, if in the Jail's custody, or via U.S. mail, if released from custody. (*Id.* ¶¶ 21–22.)

From September 29, 2024, through October 24, 2025, Birkley submitted 195 grievances through the Jail's kiosk system. Included among the grievances Birkley submitted were 14 grievances/requests that could be considered relevant to the incidents he alleges in this case: 147799, 148368, 148919, 154279, 154904, 163736, 164078, 164127, 164150, 176281, 176286, 176507, 176659, and 176662. Six of those grievances (148919, 154279, 176281, 176507, 176659, and 176662) were never appealed. Birkley never mentioned CO Johnston in any of the grievances he submitted related to his kosher diet at the Jail. (*Id.* ¶¶ 31–33, 35.)

## ANALYSIS

### A. Defendants' Motion for Summary Judgment

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)). The Court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The movant has the burden to show that summary judgment is appropriate. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The Court will "read the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) (citation omitted). Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper documentary evidence. *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934. Speculation is insufficient to create a genuine dispute of material fact. *Id.* If the movant sustains its burden and shows both that there are no disputed material facts and that it is entitled to judgment as a matter of law, "[t]he court shall grant summary judgment . . . ." Fed. R. Civ. P. 56(a).

Defendants argue that Birkley failed to exhaust administrative remedies against CO Johnston before initiating this action. Under the Prison Litigation Reform Act (PLRA), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's

institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). "Failure to exhaust is an affirmative defense for which the defendants carry the burden of proof." *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018) (citation omitted).

Defendants argue that Birkley failed to file any grievances mentioning CO Johnston or any part that he allegedly played in Birkley not receiving kosher meals. Even though Birkley complained in 14 grievances that he did not receive proper kosher meals at the Milwaukee County Jail, none of the grievances identify CO Johnston or any descriptive details linking him to the denial of an appropriate religious diet. While a plaintiff need not name an individual or identify a specific claim or legal theory in a grievance to properly exhaust administrative remedies, *see Jones v. Bock*, 549 U.S. 199, 219 (2007), the grievance must put administrators on notice of an alleged problem with a fair opportunity to respond. *See Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020). There is nothing in any of Birkley's inmate complaints suggesting that CO Johnston was involved in or responsible for Birkley not receiving kosher meals while housed at the Milwaukee County Jail.

Birkley does not dispute that he did not identify CO Johnston by name or state how CO Johnston's actions violated his rights in his religious-diet grievances. Instead, he asserts that he was not required to identify CO Johnston's name or conduct in a grievance because any grievance concerning religious diets is reviewed by CO Johnston. The mere fact that CO Johnston reviewed certain religious-diet grievances does not satisfy the PLRA notice requirements, however. Indeed, in his role as the primary program coordinator for the law library, religious matters, and

educational programs, CO Johnston only receives and processes requests from jail occupants for religious accommodations, items or services, and special religious diets. When CO Johnston receives a request to accommodate a religious practice related to food, he simply notifies the Jail's contracted vendor, Trinity Services Group, Inc., of the request. He plays no part in deciding what ingredients go in kosher meals that are served to occupants in the Jail or in approving or denying kosher or certified kosher meals to occupants. Because Birkley's grievances did not accuse CO Johnston directly of wrongdoing or otherwise suggest that he was involved in the violation of Birkley's rights, CO Johnston did not have notice that Birkley believed that CO Johnston was at fault.

Next, Birkley argues that his grievances were proper because they were never returned to him for failing to comply with the requirements in the Occupant Handbook. The Milwaukee County Jail Occupant Handbook provides, "If the grievance involves an officer . . . the grievance must identify each officer by name or, if the name of the officer is unknown, the inmate must provide details so that the officer or officers can be identified. . . . If the grievance does not identify the officers complained of in some way, the grievance will be returned to the inmate." (ECF No. 34-2 at 3.) Birkley asserts that because none of his grievances were returned to him for failing to identify CO Johnston, his grievances must be adequate. Yet, this return procedure operates as a safeguard to give inmates an opportunity to correct insufficient grievances. The fact that a grievance was not returned to Birkley does not transform an insufficient grievance into a compliant one.

Birkley also cites to grievances he submitted after he filed this lawsuit to establish that the Milwaukee County Jail and CO Johnston were on notice of his claims against CO Johnston. Yet, an inmate cannot rely on grievances submitted after the lawsuit was filed to establish exhaustion

of administrative remedies. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1995) ("a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed . . . even if the prisoner exhausts intra-prison remedies before judgment").

The "purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation." *Bergen v. Wisconsin*, No. 20-CV-813, 2022 WL 3369540, at *4 (E.D. Wis. Aug. 16, 2022) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *Schillinger*, 954 F.3d at 995). Birkley's grievances failed to put the Milwaukee County Jail and CO Johnston on notice that CO Johnston was violating Birkley's right to receive kosher meals. Birkley failed to exhaust the available administrative remedies as to CO Johnston. Therefore, CO Johnston is entitled to summary judgment.

What remains is Birkley's *Monell* claim against Milwaukee County. Defendants seem to suggest that because the Court has dismissed the constitutional claim against CO Johnston without prejudice, it must dismiss the *Monell* claim. Yet, "a municipality can be held liable under *Monell*, even when its officers are not" liable. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (citation omitted). Defendants have not offered any basis to dismiss Birkley's *Monell* claim against the County. Therefore, the Court denies Defendants' motion for summary judgment as to Milwaukee County.

**B. Birkley's Request for a Preliminary Injunction**

Birkley's amended complaint contains a request for a preliminary injunction ordering Defendants to "cease their physical violence on my mind, body, and soul, and religion, and give me my 'proper kosher meal' everyday, on Sabbath, and on high and low holidays, Passover." (ECF No. 11 at 11.) To obtain a preliminary injunction, Birkley has the burden of establishing that he has a likelihood of success on the merits, he has no adequate remedy at law, and he is likely

to suffer irreparable harm without the injunction. *See* Fed. R. Civ. P. 65(b); *Wood v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). In the context of prisoner litigation, the scope of the Court's authority to issue an injunction is circumscribed by the PLRA. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage").

The County asserts that Birkley cannot show that he is likely to succeed on a *Monell* claim that the County has a policy or practice of providing Jewish inmates with food that does not satisfy the requirements of their religious beliefs. To succeed on a *Monell* claim, a plaintiff must show that the County's policy or practice was the "direct cause" or "moving force" behind the constitutional violation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Birkley complains that he has not been receiving kosher meals while housed at the Jail. Although he speculates that his meals are not certified kosher and are not being handled in preparation for serving in accordance with kosher food laws, the evidence offered by the County indicates otherwise.

According to Leigh Nienstadt from Trinity Services Group, Inc., the entity Milwaukee County contracts with to provide food to jail occupants, including religious diets, Birkley has been

receiving certified kosher food since September 30, 2024, three days after he was booked into the Jail. (ECF Nos. 25 & 25-1.) The kosher entrées Trinity serves at the Milwaukee County Jail are prepackaged, shelf-stable meals manufactured by Food Concepts of Lebanon, Tennessee, and they are certified kosher by EarthKosher, a kosher certification agency. (ECF Nos. 25 & 25-2.) The certified kosher entrées Trinity serves include beef stew, Brunswick stew, chili, ala king, country breakfast, Rajin Cajin, spaghetti, stroganoff, and sweet and sour. Each entrée, with the exception of spaghetti, is designated *Pareve*, which means that it contains neither meat nor dairy under Jewish dietary law. Each entrée is certified *Bishul Yisroel*, meaning the cooking was performed under the direct involvement of an observant Jew. The entrées are delivered to the Milwaukee County Jail in sealed pouches. In order to preserve the kosher integrity of the meals, the entrées are prepared in a designated area of the kitchen segregated from preparation of the general population diet. Kosher small wares are also stored and kept separate from general population small wares. The sealed entrée pouch is placed on the meal tray, and the inmate opens the packaged meal himself once it is delivered to him. If a jail occupant declines the kosher meal pouch on a given day, Trinity provides a vegan alternative, so that the occupant is not without a meal. The vegan alternative is offered as a substitute, not as a replacement, for the kosher diet, which remains in effect. (ECF No. 25.)

Birkley did not file a reply in support of his request for a preliminary injunction to rebut the County's evidence. Though Birkley may prefer meals with ingredients other than tomato, he has not demonstrated that Milwaukee County has failed to take reasonable and sufficient steps to satisfy his religious meal requirements. Because Birkley has not established a likelihood of success on the merits or made a showing that he has no adequate remedy at law or will suffer irreparable harm, his request for a preliminary injunction is denied.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (ECF No. 31) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Birkley failed to exhaust available administrative remedies against CO Johnston, and his claims against him are **DISMISSED without prejudice**. CO Johnston is terminated as a defendant in this case. The motion for summary judgment is denied in all other respects. Birkley's request for a preliminary injunction (ECF No. 11) and motion for an extension of time (ECF No. 40) are **DENIED**. Discovery is to be completed no later than November 6, 2026. Dispositive motions are due December 7, 2026.

**SO ORDERED** at Green Bay, Wisconsin on August 6, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge